UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MARVON L. FORD, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) No. 1:14-cv-00731-TWP-MJD |
| CAROLYN W. COLVIN Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Marvon L. Ford ("Ford") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

**I. Background**

Ford completed his applications for DIB and SSI on February 1, 2012, alleging September 1, 2006 as the onset date of his disability. [R. at 154, 158.] In his applications, Ford reported that his disabling impairments include hepatitis C, diabetes, bipolar disorder, headaches, and auditory hallucinations.[1] [*See* R. at 195.] Ford's applications were denied initially on March 21, 2012 [R. at 71, 75] and upon reconsideration on May 11, 2012 [R. at 84, 91].

---

[1] Ford recited the relevant factual and medical background in more detail in his opening brief. [*See* Dkt. 16.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 21.] Because these facts

1

Ford timely requested a hearing on his applications, which was held before Administrative Law Judge Christine Coughlin ("ALJ") by video teleconference on January 24, 2013. [R. at 11.] Because Ford only meets the insured status requirements through September 30, 2006 and confirmed at his hearing that he cannot present sufficient evidence that he was disabled pursuant to the Act on or before that date, the ALJ limited her evaluation of Ford's case to his application for SSI, as SSI does not become payable until the month after the month in which the application is filed. [R. at 14, 33-34.] The ALJ's February 8, 2013 decision also denied Ford's applications for DIB and SSI, and on March 10, 2014 the Appeals Council denied Ford's request for review, making the ALJ's decision the final decision for the purposes of judicial review. Ford filed his Complaint with this Court on May 9, 2014, which Complaint is now before the Court.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful

---

involve Ford's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and will articulate specific facts as needed below.

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes and regulations found in cited court decisions.

activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform his past relevant work or has no past relevant work but he can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity, identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must

articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into [her] reasoning" and "build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

In her decision, the ALJ first determined that Ford met the insured status requirements of the Act through September 30, 2006 and has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date. [R. at 13.] At step two, the ALJ found that Ford's "diabetes mellitus; hepatitis C; psychotic disorder; generalized anxiety disorder; alcohol dependence; adjustment disorder with depressed mood; and degenerative disc disease" are all severe impairments, as defined by the Act. [R. at 13-14.] However, at step three the ALJ found that Ford does not have an impairment that meets or medically equals a Listing by evaluating the following listed impairments: Section 9.00B.5 for his diabetes, Listing 1.04 for his degenerative disc disease, and Listings 12.04 and 12.06 for his mental impairments. [R. at 14-16.]

At step three but before step four, the ALJ, after "careful consideration of the entire record," determined that Ford has the residual functional capacity to perform "light work" with the following additional limitations:

> [T]he claimant has . . . the ability to only occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl but never climb ladders, ropes or scaffolds. The claimant needs to avoid concentrated exposure to wetness and hazards. The claimant is also limited to simple and routine tasks; no fast-paced production of high quota demands; and occasional interaction with supervisors, co-workers, and the general public.

[R. at 16.] In making this residual functional capacity (RFC) finding, the ALJ explained that, although Ford's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of his

4

pain and other symptoms "are not substantiated by objective medical evidence." [R. at 17.] Specifically, although Ford testified that he is unable to work because he has trouble getting along with other people, he reported to Meridian Services during his intake evaluation: "I am friendly and I like people." [*Id.* (citing to R. at 659).] Additionally, the ALJ observed that Ford "has provided inconsistent statements regarding his alcohol use calling into question his overall credibility," citing to Ford's testimony that he only drinks on special occasions and would not specify how often that occurs in spite of significant evidence of record of consistently heavy alcohol use. [R. at 20, 49-53.]

With regard to the limitations assigned to Ford's mental functional capacity, the ALJ noted that "there is little evidence of [Ford's] limitations with regard to his mental impairments." [R. at 20.] The ALJ observed that, although Dr. Yee opined that Ford reported having difficulty with social interactions and concentration, Ford himself testified that "he socializes with his friends at his apartment building every day, eats at various churches and soup kitchens, and speaks with his mother and sister on the telephone almost daily." [*Id*.] Accordingly, the ALJ concluded that Ford's daily social interactions "indicate that he would be able to have occasional interaction with supervisors, coworkers, and the public," though the ALJ did limit Ford to simple, routine tasks with no fast-paced production of high quota demands. [R at 20-21.]

After noting that Ford has no past relevant work, the ALJ proceeded to step five and found that there are jobs that exists in significant numbers that Ford can perform. [R. at 21.] Given his age, education, work experience, and RFC, the ALJ concluded that Ford would still be able to perform the requirements of occupations such as a housekeeper, with 377,520 positions national and 6,200 regionally; cleaner of motor vehicles or equipment, with 71,520 positions nationally and 1,555 regionally; and packer, with 320,675 positions nationally and 7,995

5

regionally. [R. at 22.] Based on these findings, the ALJ concluded that Ford is not disabled, as defined in the Social Security Act. [R. at 22-23.]

## IV. Discussion

Ford makes a number of arguments pertaining to the ALJ's treatment of Ford's mental impairments, asserting that reversal of the ALJ's decision is proper based on each of the following arguments: (1) substantial evidence does not support the ALJ's step three decision that Ford's impairments do not meet or medically equal a listed impairment like 12.03, (2) the ALJ erred in failing to summon a psychologist to testify as to whether Ford's "combined mental impairments medically equaled any Listed impairment," (3) the ALJ's credibility determination is patently erroneous, and (4) the ALJ's residual functional capacity (RFC) finding erroneously failed to account for Ford's mental limitations. [*See* Dkt. 16 at 11-24.]

### A. Step Three Determination

Within his argument that the ALJ's step three determination is not supported by substantial evidence, Ford makes several more pointed assertions. First, Ford appears to claim that the ALJ erred in failing to mention the diagnosis of schizophrenia and in failing to therefore evaluate Ford's impairments under Listing 12.03. [Dkt. 16 at 11-12.] Ford then claims that even under the mental disorder Listings discussed, the ALJ's evaluation of certain functional limitations pursuant to Paragraph B of Listings 12.04 and 12.06 "erroneously rejected" Ford's global assessments of functioning (GAFs) as provided by his treating sources. [*Id.* at 13-16.]

#### 1. Failure to Discuss Schizophrenia and Listing 12.03

With regard to Ford's assertion that the ALJ's failure to mention Ford's "diagnosed Schizophrenia" in step three was in error, it is significant that Ford does not assert that the ALJ failed at step two to find that Ford has a severe impairment of schizophrenia and therefore that

6

argument has been waived.  [*See* Dkt. 16 at 11; *See Russell v. Chicago Bd. of Educ.*, 90 F. App'x 966, 968 (7th Cir. 2004) (failure to raise argument constitutes waiver).]  The ALJ did find, however, that Ford's "psychotic disorder" is a severe impairment, and thus Listing 12.03, which is titled "Schizophrenic, paranoid **and other psychotic disorders**," remains relevant.  [R. at 13, 20 C.F.R. pt. 404, subpt. P, App. 1, 12.03 (emphasis added).]

In step three, the failure to mention a key listed impairment, when coupled with insufficient analysis of the evidence, can constitute reversible error.  *Ribaudo v. Barnhart*, 458 F.3d 580, 583-84 (7th Cir. 2006) (ordering remand where the ALJ failed to mention Listing 1.04A because the ALJ additionally failed to evaluate any evidence that could potentially support the claimant's disability claim); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (observing that, in two circuits, an omission of a key Listing coupled with perfunctory step three analysis requires remand).  When it comes to mental impairments, however, Listings 12.02, 12.03, 12.04, and 12.06 all require that, in addition to meeting certain diagnosis-specific requirements contained in their own Paragraph A, the claimant must additionally satisfy general requirements contained in either Paragraph B or Paragraph C of each Listing.  20 C.F.R. pt. 404, subpt. P, App. 1, 12.00 *et seq.*  Aside from exchanging the name of the particular mental disorder addressed by each Listing, Paragraph B and Paragraph C of Listings 12.02, 12.03, 12.04, and 12.06 are identical.  *See id.*

Accordingly, courts have held that, where the ALJ fails to address the Listing for a relevant mental disorder but finds through sufficiently evaluating the claimant's record under another substantially similar mental disorder Listing that the Paragraph B and C requirements are not met, any error in the ALJ's failure to mention the relevant Listing is harmless.  *See Patterson v. Colvin*, No. 1:14-CV-00468-SEB-MJD, 2015 WL 898186, at *9 (S.D. Ind. Mar. 2, 2015) ("the

7

Court could remand the case for a specific consideration of Listing 12.03, but the ALJ could simply repeat the paragraph B and paragraph C analysis he already completed and conclude that Plaintiff's impairments did not meet or medically equal Listing 12.03. The result on remand would thus be the same, and remand therefore is not required"); *Guthrie v. Astrue*, No. 10-CV-03180, 2011 WL 3041365, at *23 (N.D. Ill. July 22, 2011) ("We agree with the Commissioner, and do not find harmful error in the ALJ's failure to consider Listing 12.04, for depression, based on Guthrie's severe impairments of panic disorder and agoraphobia. We note that if Dr. Sadowski's opinions support a finding of disability as to Listing 12.06(B), the opinions would similarly support such a finding on remand as to Listing 12.04(B)"). Thus, where an ALJ fails to consider one Listing of 12.02, 12.03, 12.04 or 12.06 but considers another and makes a sufficient finding that the requirements for Paragraphs B or C are not met, remand is not warranted.

Here, it is undeniable that the ALJ found Ford's psychotic disorder to be a severe impairment in step two and then failed to consider the record under the relevant Listing 12.03 at step three. [R. at 13-16.] However, the ALJ did consider Ford's record under Listings 12.04 and 12.06, which contain the same Paragraph B and Paragraph C requirements contained in Listing 12.03. [*Id.*] In evaluating whether Ford's mental disorders meet or medically equal such Listings, the ALJ found that the Paragraph B requirements are not met after evaluating Ford's activities of daily living, social functioning, and concentration, persistence or pace. [R. at 15.] In reviewing these functional categories, the ALJ specifically took into account Ford's potential limitations that might stem from his psychotic disorder, such as Ford's report "that he has delusional thoughts and hallucinations as well as seeing things that are not physically present" and Dr. Yee's observation that Ford "appears to have trouble interacting socially." [*Id.*] Accordingly, although the ALJ failed to mention a relevant listing, the ALJ considered the same

8

paragraph B and C requirements that she would have considered under Listing 12.03 when discussing Listings 12.04 and 12.06. In her discussion of the evidence, the ALJ sufficiently considered the portions of the record that might weigh in Ford's favor and that pertain to Ford's psychotic disorder, as required by the standard set forth in *Ribaudo*. Accordingly, as seen in *Patterson* and *Guthrie*, any error was harmless and remand on this issue is not proper.

### 2. Functional Findings Regarding Paragraph B

It is the duty of the ALJ to consider the entirety of the record when making her disability determination; "the ALJ may not simply ignore evidence." *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). When examining a medical report, the ALJ must examine "the entirety of the mental health assessment" and cannot limit her discussion of a report merely to the portions "that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). With regard to GAF, scores, however, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (quoting *Wilkins v. Barnhart*, 69 Fed.Appx. 775, 780 (7th Cir.2003)) (holding that the doctor's narrative, finding no significant medical impairments, substantially supported the ALJ's determination of lack of disability, in spite of the low GAF score given). Additionally, "Social Security cases are not an exception to the basic principle that law addresses itself to actualities, to substance over form," so the discussion of evidence in one section of the ALJ's decision is taken as an indication that the evidence was likewise considered by the ALJ in another. *West v. Colvin*, 10 C 5761, 2013 WL 3728807 (N.D. Ill. July 16, 2013) (citing to *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635 (7th Cir.2011); *American Bank v. City of Menasha*, 627 F.3d 261, 267 (7th Cir.2010)).

9

Here, Ford asserts that the "ALJ's failure to consider the low GAF score as evidence of disability" in the ALJ's paragraph B analysis in step three warrants reversal. [*See* Dkt. 16 at 13.] It is true that Ford was assessed with GAF scores of 41, 50, and 30 throughout the record. [R. at 551 (GAF 41), R. at 658-59 (GAF 50), R. at 761 (GAF 30).] However, the ALJ did not fail to consider these scores, as asserted by Ford. While the ALJ did not mention a GAF score during her Paragraph B analysis, she addressed all three scores in her analysis regarding her RFC finding. [R. at 17-18.] Because an ALJ's decision is taken as a whole in the promotion of substance over form, this Court, like the court in *West*, will not reverse the ALJ's decision on the mere technicality that the GAF scores were reduced to writing in one section and not another. In *Denton*, the Seventh Circuit made it clear that, while GAF scores cannot be ignored, they need not be relied upon so long as there is evidence that the ALJ considered those scores, and the fact that the ALJ reduced each score to writing in her RFC analysis is evidence that each score was indeed so considered. Thus, the ALJ did not "arbitrarily and erroneously refuse to accept the GAF assessments" during her Paragraph B analysis of Ford's mental disorders, as claimed by Ford, and reversal on this issue would be improper.[3]

**B. Failure to Summon a Psychologist**

In determining whether the claimant's impairments medically equal a Listing, "[a]n ALJ may not substitute his own judgment for a physician's opinion without relying on other medical

---

[3] In the subsequent paragraph of his brief after asserting that the ALJ ignored his GAF scores, Ford writes that the "ALJ erroneously rejected the treating-examining physicians' functional findings simply because they were contrary to the ALJ's unqualified medical opinion, requiring reversal of the denial decision." [Dkt. 16 at 13.] Although Ford follows this bold assertion with several pages of case law, no further reference to the record is made. [*Id.* at 14-16.] Accordingly, the Court can only presume that the claim related back to the GAF scores, which issue the Court has addressed. To the extent that Ford intended to assert that the ALJ rejected additional functional findings in step three, such argument has been waived by Ford's failure to develop his argument. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver").

evidence or authority in the record." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Although the ALJ has a duty "to develop the claimant's complete medical history," the ALJ does *not* have a duty "to update objective medical evidence to the time of the hearing." *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994) (quotations omitted). Where the medical evidence presented does not indicate the need for an updated medical examination, the ALJ is under no duty to order a consultative examination. *See Howell v. Sullivan*, 950 F.2d 343, 349 (7th Cir. 1991). It is instead "the claimant who bears the responsibility of providing medical evidence of an impairment." *Id.* at 348 (citing 20 C.F.R. § 404.1504, 404.1508).

Before the Court is Ford's assertion that the ALJ should have summoned a psychologist to testify as to whether Ford's mental impairments meet or medically equal a Listing instead of relying on her own "layperson's opinion." [Dkt. 16 at 17-18.] In looking to the step three determination, the ALJ did indeed cite to several medical records in evaluating whether Listings 12.04 or 12.06 were met. [*See* R. at 15-16.] When evaluating such listings, the medical criteria are found in Paragraph A while additional functional limitations and criteria are found in Paragraphs B and C. *See Wates v. Barnhart*, 274 F. Supp. 2d 1024, 1036 (E.D. Wis. 2003).

In this matter, the ALJ focused primarily on Paragraphs B and C, as she found that their requirements were not met and therefore concluded that Ford's mental impairments do not meet or medically equal either Listing. Because she focused on the functional limitations and criteria that must be present in order for mental disorders to meet or medically equal their respective Listings, the ALJ's citations to the medical record referenced functional observations and opinions. Given the functional requirements of Paragraphs B and C, references to functional observations and opinions contained within the medical record is at least appropriate, if not ideal given the context, and does not constitute a substitution of the ALJ's layperson opinion, as Ford

would have the Court believe. As indicated by the Seventh Circuit in *Howell*, it is within the ALJ's discretion to summon a medical expert if she deems it necessary, but failure to exercise this option does not in and of itself warrant reversal. Accordingly, because the ALJ did not substitute her opinion for that of a medical expert, instead citing to the medical record for support during her step three determination, the ALJ was well within her discretion to decline to summon a psychologist to testify as to whether Ford's mental impairments medically equal a Listing.

### C. Credibility Determination

Although a claimant's statements regarding his symptoms must be taken into consideration, they must also be supported by "medical signs and laboratory findings which show that [the claimant has] medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). To clarify this regulation, Social Security Ruling 96-7p requires that the ALJ must first determine the credibility of the claimant before making an assessment regarding the functional effects of the claimant's alleged pain. In addition to the medical evidence, the ALJ must consider other factors, including the claimant's daily activities, medication taken to alleviate the symptoms, factors that precipitate and aggravate the symptoms, and any other relevant factors. S.S.R. 96-7p. Significantly, a "strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." *Id.* The ALJ's credibility finding must contain specific reasons, must be supported by the evidence in the case record, and must be sufficiently specific so as to aid the claimant and the reviewer in following such reasoning. *Id.* Because the ALJ "is in the best position to determine the credibility of witnesses," great deference is given to credibility determinations on appeal. *Craft v. Astrue*, 539

F.3d 668, 678 (7th Cir. 2008). Thus, although substantial evidence must support the ALJ's other findings, only a "patently wrong" credibility determination is overturned on appeal. *Id.*

At the outset of the discussion of her RFC finding, the ALJ notes that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [the ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." [R. at 17.] After reviewing the disability report submitted by Ford and the functional report submitted by his mother, the ALJ wrote that she finds that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [*Id.*] The ALJ then found that Ford "is not as limited as alleged" because, in spite of his reports that he does not get along well with others, he reported to his treating source at Meridian: "I am friendly and I like people." [*Id.*] After discussing the medical evidence of record, the ALJ then added that Ford "has provided inconsistent statements regarding his alcohol use calling into question his overall credibility." [R. at 20.] In support of this conclusion, the ALJ recounted evidence of record indicative that Ford "considers himself an alcoholic" and once received hospital treatment with a blood alcohol content of .249, while Ford testified at his hearing that the record is "not really accurate" because he only drinks "on a holiday or someone's birthday." [R. at 20, 51.] The ALJ further notes that, in spite of allegation of limiting pain, Ford does not take any medication to help manage his alleged pain. [R. at 20.]

In his opposition to the ALJ's credibility determination, Ford claims that the determination "was illogical" because the ALJ "first determined [Ford's RFC] and then rejected the credibility of his allegations of disability" and that it was a "boilerplate credibility determination." [Dkt. 16 at 20.] Again, the Court emphasizes that the format of an ALJ's

decision does not warrant reversal, and the fact that the ALJ summarized her RFC finding in the heading prior to discussing Ford's credibility and functional limitations does not mean that her credibility determination was "illogical," let alone reversible. *See West v. Colvin*, 10 C 5761, 2013 WL 3728807 (N.D. Ill. July 16, 2013). Additionally, while the ALJ's initial comment on Ford's credibility were relatively standardized, it is necessary to read the entirety of the ALJ's decision, which clearly established several reasons as to why Ford's allegations did not seem trustworthy, mainly due to clear inconsistencies between his disability report and hearing testimony as compared to the medical record. [*See* R. at 17, 20.] In light of Social Security Ruling 97-6p's instruction that a "strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record," the ALJ's credibility determination is proper and certainly not "patently wrong," as required for reversal by *Craft*. Accordingly, this Court will not reverse the ALJ's decision on the basis of her credibility determination.

### D. RFC Finding

Ford's final argument asserts that the ALJ "failed to account for [Ford's] combined mental impairments" in her RFC determination. [Dkt. 16 at 23.] Specifically, Ford claims that the ALJ "fails to explain how [Ford] would be able to perform any substantial gainful activity when he was distracted by paranoia and unpredictable, frequent auditory and visual hallucinations and delusions." [*Id.*] Thus, Ford believes that the vocational expert (VE) was not presented with an accurate portrayal of Ford's limitations before determining that Ford is able to perform work as a housekeeper, a cleaner of motor vehicles or equipment, or a packer.

The ALJ is required "to orient the VE to the totality of a claimant's limitations," including "deficiencies of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*,

627 F.3d 614, 619 (7th Cir. 2010). Although the phrase concentration, persistence, or pace need not be used in the ALJ's hypothetical question to the VE, the most effective way to ensure that the VE is fully aware of the claimant's limitations is to include such references in the hypothetical question. *Id.* Unless it can be assumed that the VE is familiar with the claimant's limitations, which assumption is rarely appropriate, the ALJ's hypothetical question can stand "when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* When the record indicates that the claimant has "fairly obvious" problems and limitations that are not accounted for in the RFC finding and hypothetical question, remand is appropriate. *See Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (finding limitations to "unskilled work" insufficient to account for the claimant's mental limitations reflected in the record); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (finding that the ALJ failed to adequately account for limitations caused by the claimant's dementia).

In this matter, during her RFC assessment the ALJ acknowledged Ford's reports that he hears voices and sees things that are not physically present. [R. at 17-18.] However, the ALJ additionally acknowledged that "there is little evidence of [Ford's] limitations with regard to his mental impairments" and noted that the fact that Ford "socializes with his friends at his apartment building every day, eats at various churches and soup kitchens, and speaks with his mother and sister on the telephone almost daily" are recorded evidence that Ford "would be able to have occasional interaction with supervisors, coworkers and the public" when performing a job. [R. at 20.] Additionally, the ALJ notes that "the residual functional capacity incorporates the great social functioning limitations as address [sic] in the CE report by Dr. Yee." [R. at 21.] Specifically, the ALJ explains that Ford's "difficulty with social functioning is accommodated

15

for by limiting [him] to occasional interaction with coworkers and the general public," and additionally the ALJ "further accommodated [Ford's] difficulties with concentration, persistence and pace by limiting [his] capacity to simple, routine tasks." [*Id.*]

Although Ford asserts that "the ALJ's limitation of the work did not address the impact of [Ford's] mental limitations as stated in detail in the treating and examining psychologist's evaluations assessing his GAF in the totally disabled range," Ford makes no reference to a specific limitation caused by Ford's mental impairments. [Dkt. 16 at 24.] While Ford, by and through his attorney, writes in his brief that he would be unable to perform work "when he was distracted by paranoia and unpredictable, frequent auditory and visual hallucinations and delusions," there is no reference to the record of any evidence that such hallucinations are so distracting, unpredictable, or frequent so as to limit Ford's ability to perform work, and none can be found by the undersigned. [*Id.* at 23.] At the hearing on the matter, the only reference to Ford's hallucinations were Ford's attorney's statement that Ford "has auditory and visual hallucinations" and "hears voices that tell him to fight," but Ford himself gave no such testimony when he spoke at length with the ALJ. [*See* R. at 33, 34-53.] Only the following exchange, an excerpt of pages worth of swift questioning and answers between his attorney and Ford, evidences Ford's acknowledgment of his hallucinations:

      Attorney:     You've been in jail off and on all your life?
      Ford:           Yes, sir.
      Attorney:     For fighting?
      Ford:           Yes, sir.
      Attorney:     You hear voices telling you to fight?
      Ford:           Yes, sir.
      Attorney:     Do you recognize the voice?
      Ford:           No, sir.

[R. at 55.]

Although Ford's initial disability report completed on February 1, 2012 notes "hear[s] voices" as a condition that limits his ability to work [R. at 195], his medical records from Meridian Services in 2011 make no mention of any report of hallucinations, whether auditory or visual [*see* R. at 618-59]. Ford was seen consistently at Meridian from July through October of 2011 for his mental impairments, and it was not until he returned to treatment in March of 2012, after Ford filed for disability based in part on the fact that he "hear[s] voices," that he reported to Dr. Wallpe that he "sees and hears things that aren't there." [R. at 616.] Thus, the Court finds it perplexing that Ford claims significant limitations due to his hallucinations when the first instance of Ford's hallucinations in the record appears in his application for disability and no mention of any hallucinations, let alone limitations derived therefrom, can be found in the records from his many visits to Meridian the previous year. Additionally, without any testimony given directly by Ford during his hearing, only confirming the statements of his attorney with "yes, sir," it is no wonder that the ALJ was unable to conclude that there is sufficient evidence that Ford's mental impairments, including his reported hallucinations, limit his ability to work.

Even assuming that Ford does experience hallucinations, without presenting any evidence substantiating his claims that his hallucinations somehow *limit* his ability to work Ford fails to make a proper claim that the ALJ failed to account for any such limitations. *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability"). However, in spite of the little evidence indicating limitations due to his mental impairments, the ALJ did account for certain limitations in concentration, persistence, or pace above and beyond limiting Ford to unskilled work by adding to her RFC finding and hypothetical question that Ford "is also limited to simple and routine tasks; no fast-paced production of high quota demands; and occasional interaction with

supervisors, co-workers, and the general public," thus meeting the standard set forth by the Seventh Circuit in *O'Connor-Spinner* and interpreted in *Jelinek* and *Arnett*. [R. at 16.] Accordingly, the ALJ did not fail to account for Ford's limitations of concentration, persistence, or pace in her RFC finding or in her hypothetical question to the VE.

## V. Conclusion

For the aforementioned reasons, substantial evidence supports the ALJ's determination that Ford is not disabled, pursuant to the Social Security Act, and the Commissioner's decision should therefore be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 05/08/2015

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov